UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| STEVEN J. COX, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | Cause No. 1:22-cv-1279 |
| FCA US, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT FOR DAMAGES AND DEMAND FOR TRIAL BY JURY

Plaintiff Steven J. Cox, by counsel, for his *Complaint for Damages And Demand for Trial By Jury* ("Complaint"), states as follows:

## I.      INTRODUCTION

1.      This is an action brought by Steven J. Cox ("Mr. Cox") against FCA US, LLC ("FCA"), between which parties there is an employment relationship. FCA has employed Mr. Cox for nearly thirty-three (33) years. Defendant violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, as amended, ("Title VII") by discriminating against Mr. Cox on the basis of his race, African American, and retaliating illegally against him.

## II.      EEOC COMPLIANCE

2.      Mr. Cox exhausted all of the administrative proceedings available to him by timely filing a charge of racial discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC").

3.      Mr. Cox timely filed a charge of discrimination with the EEOC on or about December 1, 2021; a copy of Mr. Cox's charge of discrimination is attached and marked as Exhibit 1.

4.      Mr. Cox's Charge was timely filed in compliance with 29 U.S.C. § 626, 42 U.S.C. § 12117 and 42 U.S.C. § 2000e-5.

5.      Mr. Cox received a Dismissal and Notice of Rights on March 29, 2022, which was dated March 29, 2022. A true and accurate copy of the Dismissal and Notice of Rights is attached hereto and marked as Exhibit 2.

6.      This action was therefore timely filed within ninety (90) days of receipt by Mr. Cox of the Dismissal and Notice of Rights.

### III.   JURISDICTION

7.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, and 1343 as well as 42 U.S.C. § 2000e-2.

8.      The Title VII claims are authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

9.      Jurisdiction to grant injunctive and declaratory equitable relief as well as to award damages is invoked pursuant to 42 U.S.C. § 2000e-5(f) and (g).

10.     The practices alleged to be unlawful were committed in Howard County, Indiana, which is within the jurisdiction of the United States District Court for the Southern District of Indiana, Indianapolis Division.

## IV.   VENUE

11.     At all times relevant to this Complaint, Mr. Cox was a resident of Brownsburg in Hendricks County, Indiana.

12.     FCA is a Foreign Limited Liability Company that has several factories throughout Indiana and regularly conducts business in the Southern District of Indiana.

13.     Mr. Cox was employed at FCA located in Kokomo in Howard County, Indiana.

14.     The unlawful employment practices under Title VII alleged below arose in Howard County, Indiana. This cause of action arose in Kokomo, Indiana, which is located in Howard County. Howard County is located in the Southern District of Indiana.

## V.   PLAINTIFF

15.     Mr. Cox is a citizen of the United States, and was, during all times relevant to this Complaint, a resident of Brownsburg in Hendricks County, Indiana.

## VI.   DEFENDANT

16.     Defendant FCA is a Foreign Limited Liability Company. At all times relevant to this action, FCA was the employer of Mr. Cox.

## VII.   STATEMENT OF FACTS

17.     Mr. Cox's race is African American.

18.     Mr. Cox has loyally served FCA since July 1989—over three decades.

19.     Mr. Cox first reported race discrimination in or around 2019 after a white coworker called Mr. Cox the n-word.

20.     Although Mr. Cox filed an inquiry with the Union related to this incident, to Mr. Cox's knowledge, this employee was never disciplined as a result of his use of the n-word.

21.     Mr. Cox's supervisors instead laughed about the situation in front of the union steward.

22.     Nonetheless, FCA asserted no retaliation would occur against Mr. Cox for this report, and Mr. Cox's then-supervisor Tony Freda ended up separately apologizing to him for the incident outside of the grievance process.

23.     Since this report of discrimination, FCA began a campaign to terminate Mr. Cox's employment.

24.     Specifically, his immediate supervisor, Jared Smith, brought Mr. Cox up on multiple, bogus disciplinary issues, each of which Mr. Cox contested.

25.     Mr. Cox was forced to report to the labor office between 10 and 12 times before August 2020 to defend himself against these unwarranted accusations by Mr. Smith.

26.     In August 2020, Mr. Cox's car was towed without warning after he had cleared his use of the parking spot with FCA security.

27.     One FCA security officer called Mr. Cox a "stupid little boy," who should have known he was not permitted to park where he did.

28.     Usually, at least 2 warnings are given to FCA employees before their cars are towed.

29.     Mr. Cox called the tow yard driver to track down his car.

30.     Once he had retrieved his car, Mr. Cox called the tow yard to ask whether any other FCA employee's car had been towed that night, but the tow yard employee refused to answer Mr. Cox, leading to a verbal disagreement.

31.     The manager of the tow yard employee with whom Mr. Cox spoke on the phone apparently called the Kokomo police about the phone conversation, but the investigating police officer refused to file a report because of a lack of any wrongdoing by Mr. Cox.

32.     Nonetheless, on his return to work the following day, Mr. Cox was told he was being discharged by HR representative, Kasey Sanders, for allegedly making threatening statements to the tow yard employee.

33.     Although this incident occurred off the clock and away from company property, Ms. Sanders claimed that she could discipline Mr. Cox for the phone call that occurred off FCA time and off FCA property because the tow yard was an "affiliate" of FCA.

34.     Mr. Cox reminded Ms. Sanders that he had previously complained about a coworker's calling Mr. Cox the n-word, but Ms. Sanders ignored him.

35.     As Mr. Cox made no threatening statements against the tow yard employee, he refused to admit any wrongdoing, despite significant pressure from Ms. Sanders, which put him out of work for over a month.

36.     Eventually, FCA brought Mr. Cox back to work, but Ms. Sanders told him that she would fire him for any other alleged violation of FCA policy or complaint by a coworker, irrespective of its veracity or who was at fault.

37.     When Mr. Cox arrived at work on his first day back, he discovered that his badge was still inactive.

38.     Although Mr. Cox promptly reported the issue to FCA, on his second day back at work, his badge still had not been reactivated.

39.     Thus, Mr. Cox unexpectedly had to resolve the issue by getting a new badge, which took a significant amount of time.

40.     Although Mr. Cox had been on time that day and only technically clocked in late to FCA's timecard system because of the inactive badge, Ms. Sanders attempted to terminate his employment.

41.     Nonetheless, during a meeting with between Mr. Cox, his union representative, and Ms. Sanders, Ms. Sanders acknowledged that the attempted termination was an error on her part.

42.     Ms. Sanders and Mr. Smith closely surveilled Mr. Cox at work and continued to make unfounded accusations of wrongdoing against Mr. Cox approximately 2 to 3 times a month over the next several months.

43.     For example, Mr. Smith accused Mr. Cox of intimidating an employee, but when the employee was called in for an interview, the employee stated that the accusation against Mr. Cox was false.

44.     Mr. Cox even moved shifts to avoid any further issues with Mr. Smith, yet Mr. Smith again attempted to get Mr. Cox fired in mid-April 2021 for false allegations about sleeping on the job.

45.     During the exact timeframe that Mr. Smith accused Mr. Cox of falling asleep, witnesses confirmed that Mr. Cox had been attending a carryover meeting.

46.     However, Ms. Sanders informed Mr. Cox that he was being terminated for this sleeping issue, although sleeping on the job is not, on its own, usually a terminable offense.

47.     The Union filed another grievance on Mr. Cox's behalf, including allegations of discrimination based on Mr. Cox's race and retaliation.

48.     After being off of work for 4 weeks, Mr. Cox was told that he could return to work in the same job if he signed a last-chance letter that would permit FCA to fire him for any violation of FCA policy.

49.     Otherwise, Mr. Cox could choose to move departments away from a 7-day operation department. Mr. Cox's 7-day operation department was highly coveted amongst FCA employees.

50.     FCA thereby forced Mr. Cox to move departments, which caused a significant decrease in his overall compensation since his new department is not a 7-day operation department.

51.     This was a demotion.

52.     Mr. Cox continues to work at FCA but works in constant fear of additional retaliation by FCA and in particular Ms. Sanders.

## VIII.  STATEMENT OF CLAIMS

### COUNT I
(*Discrimination Based on Race Pursuant to
Title VII of the Civil Rights Act of 1964*)

53.     Mr. Cox incorporates the allegations of paragraphs 1 through 52 above and, in addition, states that FCA discriminated against him on the basis of his race in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*

54.     Mr. Cox's race is African American, which is a protected class.

55.     It is clear from Mr. Cox's physical features that he is African American.

56.     FCA treated similarly situated individuals outside of the protected class more favorably.

57.     Mr. Cox was subjected to a number of adverse employment actions, including, but not limited to: derogatory remarks toward Mr. Cox and his race; threatened discipline; suspension of employment; threatened termination of employment; terminations of employment; and a demotion.

58.     Mr. Cox was at all times and currently is still meeting and surpassing FCA's reasonable performance expectations.

59.     FCA violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, as amended, by discriminating against Mr. Cox on the basis of his race, African American.

## COUNT II
*(Retaliation in Violation of Title VII of the Civil Rights Act)*

60.     Mr. Cox incorporates the allegations in paragraphs 1 through 59 above, and, in addition, alleges that FCA retaliated against Mr. Cox in violation of Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e *et seq.*

61.     Mr. Cox engaged in Title VII protected activity, including but not limited to reporting race discrimination in 2019 after a white coworker called Mr. Cox the n-word.

62.     After Mr. Cox engaged in protected activity, he was subjected to a number of adverse employment actions, including, but not limited to: derogatory remarks toward Mr.

8

Cox and his race; threatened discipline; suspension of employment; threatened termination of employment; termination of employment; and a demotion.

63.    Mr. Cox continued to engage in protected activity through correspondence from his attorneys to FCA regarding further discrimination and retaliation against Mr. Cox on or around November 11, 2021 as well as by filing an EEOC charge on or around December 1, 2021.

64.    Mr. Cox continues to work at FCA but works in constant fear of additional retaliation by FCA and in particular Ms. Sanders.

## VIII.   <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff Steven J. Cox prays for judgment in his favor and against Defendants and that the following be awarded:

    a.   Order Defendant to institute and carry out policies, practices, and programs which provide equal protection for individuals of diverse race backgrounds, and which eradicate the effects of its past and present unlawful practices.

    b.   Order Defendant to make whole Mr. Cox by providing appropriate back pay and front pay for actual damages with pre-judgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of their unlawful practices, including but not limited to, pecuniary losses of Mr. Cox.

    c.   Order Defendant to make whole Mr. Cox by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices described

above, including emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

d.  Order Defendant to pay Mr. Cox emotional distress for the malicious and reckless conduct described above, in amounts to be determined at trial.

e.  Order Defendant to pay Mr. Cox damages for any and all injuries to his career.

f.  Award Mr. Cox the cost of this action including reasonable attorney fees and any such other relief as the Court may deem just, proper and equitable.

## IX.   RESERVATION OF RIGHTS

Pursuant to the rules of pleading and practice, Plaintiff Steven J. Cox reserves the right to assert additional violations of federal and state law.

## X.   JURY TRIAL

Steven J. Cox demands trial by jury on all issues so triable.

Respectfully submitted,

*s/ Courtney E. Endwright*
Sandra L. Blevins, Attorney No. 19646-49
Jamie A. Maddox, Atty. No. 26522-49
Courtney E. Endwright, Attorney No. 30557-49

*Attorneys for Plaintiff Steven J. Cox*

BETZ + BLEVINS
One Indiana Square, Suite 1660
Indianapolis, Indiana 46204
Phone: (317) 687-2222
Fax: (317) 687-2221
E-mail: litigation@betzadvocates.com